**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| **HyperQuery LLC,** | Case No. 7:25-cv-00177-DC-DTG |
| Plaintiff, | Patent Case |
| v. | Jury Trial Demanded |
| **Planview, Inc.,** | |
| Defendant. | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

1. Plaintiff HyperQuery LLC ("Plaintiff"), through its attorneys, complains of Planview, Inc. ("Defendant"), and alleges the following:

**PARTIES**

2. Plaintiff HyperQuery LLC is a limited liability company organized and existing under the laws of Delaware that maintains its principal place of business at 261 West 35th St, Suite 1003 New York, NY 10001.

3. Defendant Planview, Inc. is a corporation organized and existing under the laws of TX that maintains an established place of business at 12301 Research Boulevard, Suite 400, Research Park Plaza V, Austin, Texas 78759.

**JURISDICTION**

4. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

1

5. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Defendant because it has engaged in systematic and continuous business activities in this District. As described below, Defendant has committed acts of patent infringement giving rise to this action within this District.

## VENUE

7. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant has an established place of business in this District. In addition, Defendant has committed acts of patent infringement in this District, and Plaintiff has suffered harm in this district.

## PATENT-IN-SUIT

8. Plaintiff is the assignee of all right, title and interest in United States Patent No. 9,529,918 (the "Patent-in-Suit"); including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the Patent-in-Suit. Accordingly, Plaintiff possesses the exclusive right and standing to prosecute the present action for infringement of the Patent-in-Suit by Defendant.

## THE '918 PATENT

9. The '918 Patent is entitled "System and methods thereof for downloading applications via a communication network," and issued 2016-12-27. The application leading to the '918 Patent was filed on 2013-12-11. A true and correct copy of the '918 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10. Prior to the invention of the '918 Patent, conventional systems and methods for searching and downloading mobile applications suffered from significant technological deficiencies that made it difficult for users to find relevant applications matching their actual

needs. These conventional systems required users to navigate through extensive lists of applications organized by broad categories or search using exact keywords, resulting in an inefficient and frustrating user experience.

11. The conventional application search solutions of the prior art had several technological deficiencies. For example, conventional solutions required users to "review a list of irrelevant applications to find an application related to his particular desired topic" because "the order of the applications presented to the user is usually not based on the relevancy to the user." '918 Patent, 1:66-2:5. This resulted in "navigation through tens or hundreds of applications" making "the process for searching for an application is very time consuming." *Id*., 2:5-9.

12. Prior art search methods also relied solely on simplistic keyword matching that failed to understand user intent. As the patent explains, conventional systems would return all applications where "the input keyword exists in" them, such that searching for "ticket" would return "a list of applications that offer tickets for movies, sport events, and concerts in different cities around the world" even if the user only wanted local movie tickets. '918 Patent, 1:58-65. This fundamental technological flaw meant that "applications returned in response to the search are commonly promoted by the repository's owner, even if such applications do not meet the exact user's needs or intent." '918 Patent, 2:9-13.

13. The '918 Patent addressed these technological deficiencies by providing, among other things, computer systems and methods for causing at least one application via a communication network" that determines the search intent based on the input search query. '918 Patent, Claim 1. The invention recognized that application search could be dramatically

improved through intelligent analysis of user queries to determine search intent before selecting applications.

14. To address the technological deficiencies of conventional systems and methods, and to provide enhanced search functionality, the '918 Patent claims unconventional and inventive approach that determines the search intent based on the search intent and selects an application based on that intent, as captured in the "determining" and "selecting" steps of Claim 1. Claim 3 goes further, determining both an implicit and explicit intent. Claim 7 goes still further, employing sophisticated tokenization and analysis using "a plurality of engines" where "each engine of the plurality of engines is configured to compute a certainty score that indicates a probability that the at least one tokenized query is mapped to at least one entity."

15. The systems and methods claimed in the '918 Patent represent an advancement in computer search technology by providing a search mechanism that determines user intent and selects an application based thereon; determines both implicit and explicit intent; and, as in Claim 7, does so through a unique and inventive combination of tokenization, multiple specialized processing engines, and certainty score analysis. Thus, the claimed invention implements an inventive and unconventional approach to application search that was not previously available in conventional systems. As the specification explains, the system can handle "definitive, fuzzy, and noisy" queries, where even "noisy queries cannot be mapped to known entities, or are long and complex." '918 Patent, 6:25-30.

16. The inventive concepts of the '918 Patent provided a superior technical solution to the technical problem of inaccurate, slow, and/or inefficient application search, sparing computer system resources from being expended on serving irrelevant results, reducing network

bandwidth consumption from repeated unsuccessful searches, and creating a more efficient search system that accurately matches user intent with appropriate applications.

17. The inventive concepts of Claim 1 are particularly embodied in the steps of "determining the search intent respective of the input search query, wherein the search intent indicates a topic of interest of a user of the user device" and "selecting, based on the search intent, at least one application from at least one applications central repository." These steps represent a fundamental technological improvement over prior art keyword-matching systems. As the '918 Patent explains, the prior art's technological deficiency was that users had to "review a list of irrelevant applications to find an application related to his particular desired topic" because conventional systems could not understand what users actually wanted. '918 Patent, 1:66-2:2. The claimed "determining" step solves this technical problem by analyzing the input query to extract the user's actual intent - not solely by matching keywords, but by (for example) understanding the underlying "topic of interest" the user seeks.. The specification recognizes that "objects that can be defined using a set of attributes such as consumer goods, locations, keywords, mobile applications (apps), person names, questions, URLs, and so on." *Id.*, 6:59-7:5. This intent determination allows the subsequent "selecting" step to identify applications that actually match what the user wants, rather than simply returning all applications containing certain keywords. For example, as the specification illustrates, when a user searches for "ticket," the invention determines whether the user's intent relates to movies, sports, or concerts based on the search intent analysis, rather than returning hundreds of irrelevant ticket applications. *Id.*, 1:58-65. This two-step process of first determining intent and then selecting based on that intent represents an inventive departure from prior art's simplistic keyword matching, thereby improving computer functionality by reducing computational resources wasted on serving

irrelevant results, decreasing network bandwidth consumed by users repeatedly refining searches, and fundamentally transforming how computer systems understand and respond to user queries for application discovery.

18. These inventive concepts are captured in the limitations of Claim 1 reciting steps of "determining the search intent respective of the input search query, wherein the search intent indicates a topic of interest of a user of the user device," "selecting, based on the search intent, at least one application from at least one applications central repository." These steps require the inventive and unconventional search intent determination protocol to significantly enhance application discovery and download efficiency.

19. A further focus of the claimed advance is the determination of search intent through the coordinated analysis of multiple specialized engines, each providing certainty scores that are analyzed to derive the user's actual intent. The '918 Patent's multi-engine architecture with certainty scoring represents a concrete improvement over conventional keyword-based search systems. As explained in the specification, "each engine of the plurality of engines 146 then provides an output respective of the tokenized query. Such output includes the mapped entity from the engine 146 and a certainty score for the tokenized query based on the probability computed for the entity handled by a respective engine." '918 Patent, 7:52-58.

20. None of the methods or systems of the '918 Patent were previously performed by human beings, or capable of being performed in the human mind, as they necessarily involve complex computer systems processing queries through multiple specialized engines, computing probability scores, performing statistical and semantic analysis, and establishing direct communication links between devices to facilitate application downloads.

**COUNT 1: INFRINGEMENT OF THE '918 PATENT**

21. Plaintiff incorporates the above paragraphs herein by reference.

22. **Direct Infringement**. Defendant has been and continues to directly infringe one or more claims of the '918 Patent in at least this District by making, using, offering to sell, selling and/or importing, without limitation, at least the Defendant products identified in the charts incorporated into this Count below (among the "Exemplary Defendant Products") that infringe at least the exemplary claims of the '918 Patent also identified in the charts incorporated into this Count below (the "Exemplary '918 Patent Claims") literally or by the doctrine of equivalents. On information and belief, numerous other devices that infringe the claims of the '918 Patent have been made, used, sold, imported, and offered for sale by Defendant and/or its customers.

23. Defendant also has and continues to directly infringe, literally or under the doctrine of equivalents, the Exemplary '918 Patent Claims, by having its employees internally test and use these Exemplary Products.

24. **Actual Knowledge of Infringement**. The service of the Original Complaint filed 4/18/25, in conjunction with the attached claim charts and references cited, constitutes actual knowledge of infringement as alleged here.

25. Despite such actual knowledge, Defendant continues to make, use, test, sell, offer for sale, market, and/or import into the United States, products that infringe the '918 Patent. On information and belief, Defendant has also continued to sell the Exemplary Defendant Products and distribute product literature and website materials inducing end users and others to use its products in the customary and intended manner that infringes the '918 Patent. See Exhibit 2 (extensively referencing these materials to demonstrate how they direct end users to commit patent infringement).

26. **Induced Infringement**. At least since being served by this Complaint and corresponding claim charts, Defendant has actively, knowingly, and intentionally continued to induce infringement of the '918 Patent, literally or by the doctrine of equivalents, by selling Exemplary Defendant Products to their customers for use in end-user products in a manner that infringes one or more claims of the '918 Patent.

27. Exhibit 2 includes charts comparing the Exemplary '918 Patent Claims to the Exemplary Defendant Products. As set forth in these charts, the Exemplary Defendant Products practice the technology claimed by the '918 Patent. Accordingly, the Exemplary Defendant Products incorporated in these charts satisfy all elements of the Exemplary '918 Patent Claims.

28. Plaintiff therefore incorporates by reference in its allegations herein the claim charts of Exhibit 2.

29. Plaintiff is entitled to recover damages adequate to compensate for Defendant's infringement.

## JURY DEMAND

30. Under Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    A judgment that the '918 Patent is valid and enforceable

B.    A judgment that Defendant has infringed directly and indirectly one or more claims of the '918 Patent;

C.    An accounting of all damages not presented at trial;

D.     A judgment that awards Plaintiff all appropriate damages under 35 U.S.C. § 284 for Defendant's continuing or future infringement, up until the date such judgment is entered with respect to the '918 Patent, including pre- or post-judgment interest, costs, and disbursements as justified under 35 U.S.C. § 284;

E.     And, if necessary, to adequately compensate Plaintiff for Defendant's infringement, an accounting:

    i. that this case be declared exceptional within the meaning of 35 U.S.C. § 285 and that Plaintiff be awarded its reasonable attorneys fees against Defendant that it incurs in prosecuting this action;

    ii. that Plaintiff be awarded costs, and expenses that it incurs in prosecuting this action; and

    iii. that Plaintiff be awarded such further relief at law or in equity as the Court deems just and proper.

Dated: June 10, 2025            Respectfully submitted,

/s/ Isaac Rabicoff
Isaac Rabicoff
Rabicoff Law LLC
4311 N Ravenswood Ave Suite 315
Chicago, IL 60613
7736694590
isaac@rabilaw.com

**Counsel for Plaintiff**
**HyperQuery LLC**